The State of Florida ex rel. Trustee Realty Company, *Relator*, v. H. F. Atkinson, Circuit Judge, *Respondent*.

En Banc.

Opinion filed May 30, 1929.

*Robert M. Thomson*, for Relator;

*Edith M. Atkinson*, for Respondent.

Whitfield, J.—An alternative writ of mandamus issued by this Court alleges that in an application for process in a chancery cause an affidavit states that the residence or residences of the defendants "are unknown to the complainant and to affiant," the respondent Circuit Judge "refused to make" an order for the publication of notice for defendants to appear in the cause. The writ commanded the Circuit Judge "to enter the aforesaid order of publication" or show cause etc.

A motion to quash contains grounds that the affidavit does not comply with the statute and is insufficient in that affiant fails to state whether said defendants are residents

of a state or county other than the State of Florida, nor does affiant state in said affidavit that said defendants are residents of the State of Florida." Not waiving the motion to quash the respondent avers that the order for publication of notice would have been made had the affidavit complied with the requirements of Sec. 4895 Comp. Gen. Laws 1927, Sec. 3111 Rev. Gen. Stats. 1920.

The legal sufficiency of an affidavit made in an application from an order for the publication of notice to the defendant to appear in a chancery suit, which affidavit states "that the places of residence of" the defendants "are unknown," without other averments as to the residence of the defendants, is considered and determined in the opinion of the Court prepared by MR. JUSTICE STRUM in the case of Artin Balian et al. v. The Wekiwa Ranch, filed May 29, 1929. See also Blake v. Zittrouer, 1 Fed. R. (2nd) 496; Broward Estates v. Hon. C. E. Chillingworth, et al., 93 Fla. 366, 112 So. R. 64.

The alternative writ should be quashed because the discretionary writ of mandamus is not the proper remedy, where, as here, the act commanded to be done concerns not a ministerial act of issuing process involving no discretion, but the act involves to a certain extent judicial discretion of a Circuit Judge, see McDaniel v. McElvy, 108 So. R. 820, 91 Fla. 770, and the relator has a remedy by appeal from the interlocutory order in chancery denying an application for an order for publication of notice to appear in a cause, when the action of the Judge complained of is not a refusal to entertain or to exercise jurisdiction but a denial of the order asked for after jurisdiction has been exercised by considering the application on its merits and refusing to make the order. See State v. Helen S. Burbridge, 41 Fla. 450, 26 So. R. 1016; State v. Wolfe, 58 Fla. 523, 50 So. R. 511; Welch v. State ex rel. Johnson,

85 Fla. 264, 95 So. R. 751; State ex rel. v. Chillingworth, Judge, filed this term. Tibbetts v. Olson, 91 Fla. 824, 108 So. R. 679, an appeal from an order denying an order of publication.

In Broward Estates Corporation v. Chillingworth, Judge, 93 Fla. 366, 112 So. R. 64, a writ of mandamus was denied, though the action of the Circuit Judge in refusing an order for the publication of notice to defendants to appear in a chancery cause, was considered and approved. State ex rel. Matheson v. King, 32 Fla. 416, 13 So. R. 891.

The alternative writ should be quashed as not being the proper remedy as appears on a consideration of the entire record.

. TERRELL, C. J., AND BROWN, J., concur.

ELLIS AND BUFORD, J. J., concur in the conclusion.

ELLIS, J.—An alternative writ of mandamus was issued by this Court commanding Hon. H. F. Atkinson, judge of the Eleventh Judicial Circuit of Florida, to ''enter an order of publication'' in a cause instituted in the Circuit Court for Dade County by Trustees Realty Company, a Florida Corporation, against Howard H. Gilbert and others, or that the respondent appear and show cause why he refuses to do so.

The writ alleges that the Trustees Realty Company exhibited its bill in the Circuit Court for Dade County against Gilbert, his wife and others for an ''accounting and for foreclosure of mortgage against certain real estate'' in Dade County. The mortgage was executed by Gilbert and his wife to South Florida Mortgage Company and by it assigned to Trustees Realty Company.

It is alleged that the relator filed its affidavit in the office of the Clerk of the Court and presented an ''order of pub-

lication" to Judge Atkinson and requested him "to make an order against said defendants," Gilbert and wife, but the Judge refused to "make said order."

The relator sought to obtain an order for the substituted service or service by publication for which provision is made by Sec. 3111 Rev. Gen. Stats. 1920, Sec. 4895 Comp. Gen. Laws 1927.

The affidavit which was filed in the Clerk's office is in the following words:

In the Circuit Court of the Eleventh Judicial Circuit of Florida in and for Dade County in Chancery No. 26476-B.

Trustees Realty Company, a Corporation organized under the laws of the State of Florida, Complainant v. Howard H. Gilbert, et al., Defendants.

Affidavit for Publication.

State of Florida, County of Dade, SS.

Before me, the undersigned authority, personally appeared H. R. Bash, who, being first duly sworn upon his oath, says that he is Secretary of the Complainant corporation; and for and on behalf of said corporation, says that the residence or residences of said defendants, HOWARD H. GILBERT and HARRIET Z. GILBERT, his wife, are unknown to the Complainant and to this Affiant; that there is no person in the State of Florida, the service of a subpoena upon whom would bind such defendants; that it is the belief of this Affiant that said Defendants are each over the age of twenty-one (21) years.

Further this affiant sayeth not.

H. R. BASH, Affiant.

Subscribed and sworn to before me this 27th day of March, A. D. 1929.

Sallie Lee VanArsdall,
Notary Public, State of Florida, at Large.
(Notary Public Seal)

My commission expires: 5-16-32.

Sec. 3111, Rev. Gen. Stats., is as follows:

Whenever the complainant, his agent or attorney, shall state in a sworn bill or affidavit, duly filed, the belief of the affiant that the defendant is a resident of a state or country other than this State, specifying as particularly as may be known to affiant such residence, or that his residence is unknown, or that, if a resident, he has been absent more than sixty days next preceding the application for the order of publication, and that there is no person in the State the service of subpoena upon whom would bind such defendant, or that he conceals himself so that the process cannot be served upon him, and further states the belief of the affiant as to the age of the defendant being over or under 21 years, or that his age is unknown, the judge or clerk of the court in which such bill shall have been filed shall make an order against the defendant requiring him to appear to the bill upon a day to be fixed by the order, not less than thirty nor more than fifty days from the time of the making of the order, if he be stated therein to be a resident of the United States, and not less than fifty nor more than eighty days if he be stated to be a non-resident of the United States, or if his residence be stated as unknown. For the purpose of this action, the insular possessions of the United States shall be regarded as foreign countries.

It appears from the affidavit that the complainant is a corporation; that the affidavit was not made by the complainant, its agent or its attorney, but it is made by one describing himself as "Secretary of the Complainant Corporation" and swears "for and on behalf" of the corporation. No seal of the corporation is affixed to the affidavit, and as to the places of residence of Gilbert and his wife it contains the bald statment in the words of the statute that the "residence or residences of said defendants," naming them, "are unknown" to which are added the words "to the complainant and this affiant."

The further statement is made, in the exact words of the statute, "that there is no person in the State of Florida the service of a subpoena upon whom would bind the defendants." It further states the belief of the affiant that the defendants are each over the age of twenty-one years.

The affidavit contains no averments of fact upon which the court could exercise its judgment as to whether the defendants were in fact non-residents of the State, whether their places of residence, if within the State, were unknown; whether they are or are not residents of the United States; or what effort, if any, had been made by either the complainant or the affiant to ascertain the places of defendants' residence.

The mandamus is sought upon the bare showing that the place of residence of the defendants is unknown to affiant and the complainant; that there is no person in Florida the service of a subpoena upon whom would bind the defendants; and the affiant's belief as to their ages.

Did such an affidavit give to the corporation complainant a clear legal right to the making of the order of publication by the respondent, and is such an affidavit intended by the statute to cast upon the judge the mere ministerial duty of signing an order of publication and directing it to be

published in the "Miami Review and Daily Record" once each week for four consecutive weeks? Those names appear in the order as being the name of a newspaper, which order the alternative writ commanded the respondent to enter.

Since the decision of this Court in the case of Balian et al. v. Wewika Ranch, decided February 13, 1929, and reported in 120 So. R. 317, pamphlets, there have been comments by some members of the bar to the effect that the construction placed upon the statute in that case was different from that which many members of the bar had placed upon it and different from a construction that the Federal Court for the Southern District of this State had placed upon it in the case of Blake v. Zittrouer, 1 Fed. R. (2 Series) 496. In deference to the views expressed by the members of the bar in letters addressed to the writer the matter of the utterances in the Wekiwa Ranch case upon the sufficiency of an affidavit for publication has been again considered by the court. Mr. Justice Strum, who took no part in the Wekiwa Ranch case on account of illness, has prepared an able presentation of his views upon the subject which are in effect that the affidavit in the Wekiwa Ranch case was sufficient under the statute.

The question was not fully discussed in the case mentioned and what was said upon the subject was not necessary to a decision as the court held that the bill of complaint contained no ground for equitable relief.

In the instant case there is little, if any more, cause for a discussion of the question as the writ requires the judge to do one or more things in the matter of entering the order which the statute does not require of him and in the opinion of the writer seeks to control the judicial discretion of the judge as to the sufficiency of the showing concerning the defendants' residence, as well as to the representative capacity in which the affiant acted.

It may be well first to clear away all objections of a minor character, if they may be so termed, in connection with this most important question of jurisdiction or power to take one man's property and give it to another, which may be done only when the requirements of the "law of the land" are observed by the court which undertakes to exercise the power.

In the first place, then, the order which was prepared for the judge's signature and which the alternative writ commands him to enter contains a clause requiring the order to be published once a week for four weeks in a certain newspaper published in Dade County. Neither Sec. 3111, Rev. Gen. Statutes 1920, nor Chap. 10102, Laws 1925, as amended by Chap. 11364, Laws 1925, Sec. 4896, Comp. Gen. Laws 1927, requires the judge to name the newspaper in which the order shall be published. Paragraph 2 of Sec. 3111, *supra,* Sec. 4895, Comp. Gen. Laws 1927, merely provides that the clerk shall cause the orders to be published in such newspaper "as may be designated in the order," but Sec. 4896, *supra,* which must be read in connection with Sec. 3111, Rev. Gen. Stats., now Sec. 4895, Comp. Gen. Stats., 1927, places the matter of choice of a newspaper with the Clerk of the Court. In the next place, if Sec. 3111, *supra,* Sec. 4895, Comp. Gen. Laws 1927, is in force and controls the action of the court the length of time fixed in the proposed order for its publication is too short, for the section requires publication for not less than fifty nor more than eighty days if the residence of defendant be stated as unknown.

There is some doubt as to the application of Sec. 4896, Comp. Gen. Laws 1927, which makes provision for the publication of chancery orders where the complainant is *entitled* to an order of publication or notice to appear for purpose of securing constructive service of process against any "defendant, party or person" whether they be known

or unknown "absent, concealed or non-resident" and whether they be stated to be a resident of this State or of some other state or country and whether the "residence" be stated as "known or unknown."

The affidavit does not state that the defendants are "absent, concealed or non-residents," but merely states that their residence is "unknown to complainant and to this affiant." There is nothing in the affidavit to exclude the idea that the defendants are neither absent, concealed or non-residents nor that their residence is unknown to others than the complainant or the affiant. If there was any doubt as to the purpose of the Legislature in the enacting of Chap. 6481, Laws 1913, Sec. 3111, *supra*, Sec. 4895, Comp. Gen. Laws 1927, in providing service on absent defendants by publication it was removed by Chap. 10102, Laws of 1925, amended by Chapter 11364, Laws 1925, *supra*, Sec. 4896, Comp. Gen. Laws 1927, which definitely declares that its purpose is to provide for service upon "any absent, concealed or non-resident defendant" whether he be stated a resident of this State, or some other state or territory of the United States or District of Columbia, or some foreign state, "whether the residence" be stated as "known or unknown."

There are other reasons, however, which lie beneath the surface and go to the very foundation of this procedure by which the property of a person is taken by the court and given to another without obtaining jurisdiction of the person whose property is taken, which in the writer's opinion fully justifies the dictum in the Wekiwa Ranch case, and require the granting of the motion to quash in this case.

The respondent moved to quash the alternative writ because he says that the writ shows on its face that the relator did not comply with the requirements of Sec. 4895, Comp. Gen. Laws 1927; that the affidavit does not state that the

defendants are residents of a state other than this, nor that they are residents of this State; that no proper order for substituted service by publication could be made and that both the affidavit and order (which he is commanded to enter) are defective and the publication of the order would confer no jurisdiction of the defendants.

Every ground taken by that motion to quash is valid. If the relator wanted the benefit of the short publication of notice he should have left the name of the newspaper out of the order to be signed by the judge and should have shown by his affidavit that he sought an order of publication or notice to appear for the purpose of securing constructive service of process or notice against defendants who were "absent, concealed or non-residents" and stated in such affidavit that such defendants were either residents of this State or some other state or territory or possession of the United States or District of Columbia or some foreign kingdom or country "and whether the residence of any such defendant, party or person" was known or unknown. That section does not require the affiant to state that "there is no person in the State of Florida the service of a subpoena upon whom would bind such defendants," nor does it require any statement as to the affiant's belief concerning the age of the defendants.

The purpose of the section is to provide for an order of publication requiring the defendant to appear within a shorter time than required by Sec. 4895, *supra,* and leave to the clerk's discretion the selection of a newspaper in which the order shall be published, in such cases only where the order sought is against "any defendant, party or person, natural or artificial," whether such defendant be "adult or infant, known or unknown, dead or alive, absent, concealed or non-resident" *and* whether such person be stated to be a *resident* of this State or some other state or territory,

"and whether the *residence*" of such person be stated as known or unknown.

Every requirement of a statute of this character must be strictly complied with and the statute strictly construed. Wheeler v. Cobb, 75 N. C. 21; Ricketson v. Richardson, 26 Cal. 149; Fontaine v. Houston, 58 Ind. 316; Dowell v. Lahr, 97 Ind. 146; Cissell v. Pulaski Co., 3 McCrary (U. S.) 446.

It is held in many jurisdictions that an affidavit, the basis for the order of publication, which merely repeats the language of the statute, is not sufficient. Ricketson v. Richardson, *supra;* Yolo Co. v. Knight, 70 Cal. 431, 11 Pac. R. 662; Thompson v. Shiwassee Cir. Judge, 54 Mich. 236, 19 N. W. R. 967; Mackubin v. Smith, 5 Minn. 367; Beach v. Beach, 6 Dak. 371, 43 N. W. R. 701.

The reasoning in the Ricketson case, *supra,* is most cogent. It is in substance that the statute cannot go into details but is compelled to content itself with a statement of the ultimate facts which must be made to appear leaving the details to be supplied by the case. Between the statute and the affidavit there is a relation analogous to that existing between a pleading and the evidence which supports it. The ultimate facts of the statute must be proved, so to speak, by the affidavit by showing the probatory facts upon which each ultimate fact depends. The court said: "These ultimate facts are conclusions drawn from the existence of other facts, to disclose which is the special office of the affidavit." "To hold that a bald repetition of the statute is sufficient, is to strip the court or judge to whom the application is made of all judicial functions and allow the party himself to determine in his own way the existence of jurisdictional facts—a practice too dangerous to the rights of defendants to admit of judicial toleration." The ultimate facts stated in the statute are to be found, so to speak, by the court or judge from the probatory facts stated in the affidavit before

the order for publication can be legally entered, said the court.

The conclusion is irresistible that where service of this kind is sought the proceedings should be scrutinized and strict compliance with every condition of the law exacted ''otherwise its provisions may lead to gross abuse, and the rights of person and property made to depend upon the elastic consciences of interested parties, rather than the enlightened judgment of a court or judge.'' This is what was meant by the court in the Wekiwa Ranch case, *supra,* by the following language: ''Every fact should be shown which is necessary under the statute to give the right to an order for service by publication.''

The same principle was announced in the case of McDaniel v. McElvy, 91 Fla. 770, 108 So. R. 820, by the able opinion of Mr. Justice STRUM in which the rule observed in the California jurisdiction was tacitly approved by the citation of cases from the courts of that state. There is nothing in that opinion in contravention of that doctrine. The court had under consideration Chap. 11383, Laws of Florida, Extraordinary Session, 1925. The Act was designed, as its title indicates, to provide a method for removing clouds from and confirming titles to land and decreeing possession thereof against defendants, whether known or unknown, and providing for service of process by publication in such cases, etc. With regard to known defendants it was held that while allegations of a categorical nature, which follow the words of the statute, are sufficient as a predicate for the issuance of the order of publication, the chancellor is not thereby precluded from requiring appropriate proof of those allegations or any other allegations as a prerequisite to the entry of a decree. That language had reference to those provisions of the statute requiring the complainant to allege the facts which support his sworn statement or

allegation with reference to interested persons "whose names and residences are unknown" or his lack of knowledge and his inability to ascertain whether the defendants are dead or alive.

The rule with regard to constructive service by publication in cases where the defendants are unknown differs from the rule in cases where the defendants are known.

As to the first class, unknown defendants, the averment in the affidavit in the words of the statute is sufficient. That is obviously true, for nothing else the complainant could say would add one feather's weight to the statement that there are unknown persons interested in the suit. But where the defendant is known and may be a resident of the state the reasonableness of the complainant's statement that the defendant's residence is unknown should be made to appear to the judge by such facts as tend to show diligence in endeavoring to ascertain the place of such residence and should not be left to the possibly pliant conscience of an interested party, even if lack of knowledge of such place of residence is sufficient alone to justify the order.

That is the doctrine approved and followed by the California courts. The case of Security Savings Bank v. State, 263 U. S. 282, 68 L. Ed. 301, 44 Sup. Ct. R. 108, was a case arising in that State where, under a statute seeking to compel the transfer by Security Savings Banks to the State Treasurer all deposits which had been unclaimed for more than twenty years, the Legislature of California, the Supreme Court of the State and the Supreme Court of the United States treated persons in whose names the accounts stood as "unknown" persons in view of the conditions, which the court said established the futility of a requirement of personal service.

The case of American Land Co. v. Zeiss, 219 U. S. 47, 55

L. Ed. 82, 31 Sup. Ct. R. 200, was another case originating in California in which substituted service on "unknown defendants" was involved.

These cases do not justify the unqualified statement that "it is competent for the Legislature to authorize the issuance of substituted process upon allegations which follow the wording of the statute, unsupported by other allegations which show that personal service is impossible or impractical."

In the McDaniel case, *supra,* one of the points involved was the validity of the substituted service of process upon "unknown" defendants.

The statement of the law is made in 21 R. C. L. 1290 under the title Process and subtitle "Unknown Claimants" that: "since proceedings against this class of persons rest on the ground of necessity, the omission of personal service on all who can with reasonable diligence be *ascertained* and *found* cannot be justified," Title and Document Restoration Co. v. Kerrigan, 150 Cal. 289, 88 Pac. R. 356, 119 A. S. R. 199, 8 L. R. A. (N. S.) 682.

Constructive service by publication may be authorized by the state and resorted to in actions touching real property and whether such actions be in *rem* or *quasi-rem* is immaterial. The distinction is one more of shadow than substance. It is the existence of the property within the jurisdiction of the court. The principle involved is that the state may provide for the adjudication of all adverse rights of persons in property within its borders and to the end that such jurisdiction may be complete the legislature may provide a substituted service of process for cases in which actual service cannot be made. In such case nothing more is required by the law of the land than that the substituted service shall be such as in the exercise of

legislative discretion shall be found most apt to accomplish the purpose of actual service. See 21 R. C. L. 1283.

To authorize a court to determine the adverse claims of parties touching their rights in things judicial process is indispensable. In its larger sense judicial process comprehends all the acts of the court from the beginning of a proceeding to its end. In a narrower sense it is: "the means of compelling a defendant to appear in court after suing out the original writ, in civil, and after indictment, in criminal cases." Bouvier Law Dic. In every sense it is the act of the court. In Webster v. Reid, 11 How. (U. S.) 57, 13 L. Ed. 761, the court, referring to suits to quiet titles to lands in proceedings where provision was made for service by publication, said: "These suits are not proceedings in rem against the land, but were in personam against the owners of it. Whether they all resided in the territory or not does not appear, nor is it a matter of any importance. No person is required to answer in a suit on whom process has not been served, or whose property has not been attached."

The doctrine is universally recognized that the legislature may provide for substituted service of judicial process when it is required by necessity. The trouble, as is most often the case, arises from an attempted misapplication of the principle. "Due process of law," the "Law of the Land," is the protection afforded to the people in a free government by State Constitutional provisions, by the Fourteenth Amendment to the Constitution of the United States, and such provisions have their origin in the Magna Charta which secured to the subject the free enjoyment of his life, his liberty and his property, except as they may be declared by the judgment of his peers or the law of the land to be forfeited. Sir William Blackstone said that provision alone would have merited the

title of Magna Charta which was bestowed upon the great document. Cooley's Const. Lim. (8 Ed.) 733.

The reason for saying that substituted service of process by publication is valid as a thing of necessity lies in the fact that when a party has property in a state and resides elsewhere his property is justly subject to all valid claims that may exist against him there. Cooley Const. Lim. (5th Ed.) 501.

But to render the jurisdiction of a court effectual in any case it is necessary that the thing in controversy or the parties interested be subjected to the process of the court. It is essential to due process of law. Lacher v. Venus, 177 Wis. 558, 188 N. W. R. 613, 24 A. L. R. 403; Truax v. Corrigan, 257 U. S. 312, 66 L. Ed. 254, 42 Sup. Ct. R. 124; Ekern v. McGovern, 154 Wis. 157, 142 N. W. R. 595, 46 L. R. A. (N. S.) 796.

In the proceedings which in this state are authorized to be taken by the courts upon substituted process by publication the *res* is not served with process; it is not taken into the custody of the court. It lies merely within the jurisdiction of the court which fact however does not deprive the owner of his right to notice of any action of the court by which it is sought to deprive him of his property. But in view of the fact that his property should be and is subject to the jurisdiction of the state wherein it lies, regardless of where the owner may reside, a necessity arises, something essential to the full exercise of the sovereign power of the state, and that necessarily gives rise to the service of process against the individual owner of the land by a substituted service of the process by publication, and in such case the judgment extends only to his interest in the *res* and is valid only to that extent.

As has been said the proceding is not in rem. It is certainly not strictly in personam except in so far as the

owner's interest in the property extends. But the necessity arises, as said above, because the property should be and is subject to the sovereign power of the state wherein it lies. The owner is protected by the "law of the land" against any attempt to deprive him of his constitutional guaranties to the protection of his property which requires jurisdiction of his *person* before his rights may be adjudicated. So out of the necessities of the case constructive service by publication of notice of the institution of the suit against him has grown, which is considered effectual to bring to his personal attention the proceedings against him and his property.

Every state in the Union has devised some form upon which that kind of process may be deemed sufficient. In all cases they proceed upon the theory that the defendant is a nonresident, or that he is a resident and his place of residence is unknown or that being a resident he conceals himself so that the process of the court cannot be served upon him, or is absent from the jurisdiction, or that he is unknown.

If he is a resident of the state where the cause is pending he must be personally served with process, unless he is absent or conceals himself so that the processes of the court cannot be served upon him, and in this State where there is no person the service of a subpoena upon whom would bind him, which is another form of substituted service.

The doctrine obtains in the majority, if not all, the states of this country that all reasonable means to ascertain the whereabouts of a party should be taken and then the court being satisfied that the statute has been complied with and reasonable inquiry made as to the defendant's whereabouts will grant the order of publication. Extraordinary efforts to ascertain defendant's whereabouts are of course not necessary; only a showing of a reasonable effort to do so

is necessary. See Bixby v. Smith, 3 Hun. (N. Y.) 60; Pillsbury v. Streeter, 15 N. D. 174, 107 N. W. R. 40; Rickertson v. Richardson, *supra;* Coughran v. Markley, 15 S. D. 37, 87 N. W. R. 2; Woods v. Pollard, 14 S. D. 44, 84 N. W. R. 214; Mills v. Smiley, 9 Idaho 325, 76 Pac. R. 783; Palmer v. McMaster, 13 Mont. 184, 33 Pac. R. 132, 40 Am. St. R. 434; Whaley v. Carter, 1 Dak. 504; Cohen v. Portland Lodge, 81 C. C. A. 483, 152 Fed. R. 357, affirming 144 Fed. R. 266; Rue v. Quinn, 137 Cal. 651, 66 Pac. R. 216; Jacob v. Roberts, 223 U. S. 261, 56 L. Ed. 429, 32 Sup. Ct. R. 303; affirming 154 Cal. 307, 97 Pac. R. 671; Belmont v. Cornen, 82 N. Y. 256; Wheeler v. Cobb, *supra;* Spaulding v. Polly, 28 Okla. 764, 115 Pac. R. 864; Thompson v. Judge, *supra;* Alderson v. Marshall, 7 Mont. 288, 16 Pac. R. 576; Romig v. Gillett, 187 U. S. 111, 47 L. Ed. 97, 23 Sup. Ct. R. 40; Chapman v. Moore, 151 Cal. 509, 91 Pac. R. 324, 121 A. S. R. 130; McCracken v. Flanagan, 127 N. Y. 493, 28 N. E. R. 385, 24 A. S. R. 481.

Every fact enumerated in the statute in the conjunctive must be shown in the affidavit. Cook v. Farmer, XI Abb. Pr. (N. Y.) 40, affirmed in 34 Barb. 95; 32 Cyc. 477.

When the defendant is alleged to be a nonresident of the state no other fact is necessary to be set out in the affidavit to support that averment. That fact is all inclusive and alone justifies the order of publication. In this State the affiant is permitted to allege his belief as to that fact and the statement of his belief in that regard may be sufficient but he must also allege that there is no person in the State the service of a subpoena upon whom would bind the defendant.

The action of the judge in entering or making an order is a judicial act. If the clerk issues it, it is a ministerial

act the validity of which the court may any time inquire into, as we said in the McDaniel case, *supra*.

The statute of this State, Sec. 3111 Rev. Gen. Stats. 1920, *supra*, provides for the making of an affidavit which must set out allegations different in character in that some are statements of complete fact, others conclusions of fact.

The affiant is permitted to allege as to his belief that the residence of the defendant is in a state or country other than this State. Without deciding that the affidavit should set out the facts upon which such belief rests the affiant must also allege that there is no person in the state the service of a subpoena upon whom would bind the defendant. This requirement is obvious because the best and most efficient service of process must be had before resort to service by publication.

The next requirement of the statute is that if the defendant is a nonresident his place of residence must be given particularly, if that cannot be done the statement must be made that it is unknown. If it is true that publication of service may rest upon the statement alone that the residence of the defendant is "unknown" the law requires a reasonable showing of diligence to ascertain the place of such residence. It is inconceivable that the purpose of the statute was to deprive the judge of the judicial function of ordering a writ necessary to the jurisdiction of the court, which he will do only after being satisfied that the necessities of the case require it, and leave the matter solely to the partial, perhaps biased, judgment of a party to the litigation as to the court's jurisdiction. Such a theory is wholly inconsistent with the reason of the law, the purposes of the statute and constitutional guaranties of due process. It virtually makes a complainant judge in his own case, so far at least as jurisdiction of the court is concerned, over the defendant.

Again if the residence of the defendant is unknown to the affiant, *non constat* but that the defendant resides in the state, does not conceal himself so that process cannot be served upon him and is not absent from the jurisdiction. In that case obviously he must be personally served with process. So that it is imperative that the affidavit should disclose reasonable diligence to ascertain his whereabouts in the state before the fact contemplated by the statute "unknown" residence may be established.

In the instant case the affiant does not follow the words of the statute. He alleges that the residence of the defendants is "unknown to him and the complainant," obviously limiting the lack of such knowledge to two persons, viz: himself and the complainant. He does not allege that the defendants do not reside in Florida, *non constat* they may reside here and their places of residence are well known and they may be easily found. He alleges that there is no person in the State the service of a subpoena upon whom would bind them but that is not required by the provisions of the Sec. 4896 Comp. Gen. Laws 1927 which secures the shorter period of publication sought by the complainant.

The affidavit does not exclude the idea that the residence of the defendants is known to the sheriff, other officers of the court or to the judge. If known to the latter to be within the State is it conceivable that he would be required under the statute to enter the order?

The motion to quash should be granted.

BUFORD, J. (specially concurring) : I concur in the conclusions reached as stated in the opinion prepared by MR. JUSTICE ELLIS, but I can not subscribe to that part of the opinion which appears to me to be in conflict with the opinion of McDaniel v. McElvy 91 Fla. 770, 108 So. R. 820.

In McDaniel v. McElvy, *supra*, this court say:

We do not regard the provisions of Chap. 11383 as requiring the complainant to allege the facts which support his sworn statement or allegation with reference to interested persons whose names and residences are unknown, or his lack of knowledge and his inability to ascertain whether the defendants are dead or alive, so long as such allegations strictly follow the statute. The allegations of paragraphs first and ninth of the bill of complaint herein, taken together, are therefore sufficient to authorize the issuance of the order of publication. See Ballew v. Young, 103 Pac. R. 623; 23 L. R. A. (N. S.) 1084. The requirements of the statute referred to in Ortell v. Ortell, 91 Fla. 50; 107 So. R. 442, differ from those of the statute here considered.

But while allegations of a categorical nature which follow the words of the statute are sufficient as a predicate for the issuance of the order of publication, the Chancellor is not thereby precluded from requiring appropriate proof of those allegations, as any other allegations, as a prerequisite to the entry of a decree. What and how much evidence the Court shall require to satisfy it upon the question of due diligence in these matters rests largely with the court granting the order. Extraordinary steps to ascertain the whereabouts of the party are not required. But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice, when by the exercise of reasonable diligence actual notice can be given. Reasonable diligence in such matters is an honest effort,—and one appropriate to the circumstances,—to ascertain whether actual notice may be given, and if so to give it. Such effort, how-

ever, need not embrace a search in remote parts of the State, Jacob v. Roberts, 223 U. S. 261, 56 L. Ed. 429; and it is not essential that all possible or conceivable means should be used. But the effect should usually extend to inquiry of persons likely or presumed to know the facts sought.

It will be observed that the quotation above included the following language, to-wit:

But while allegations of a categorical nature which follow the words of the statute are sufficient as a predicate for the issuance of the order of publication, the chancellor is not thereby precluded from requiring appropriate proof of those allegations, as any other allegations, as a prerequisite to the entry of a decree. What and how much evidence the Court shall require to satisfy it upon the question of due diligence in these matters rests largely with the court granting the order. Extraordinary steps to ascertain the whereabouts of the party are not required. But judgments which exclude persons from any interest in or lien upon land should not be rendered without actual notice, when by the exercise of reasonable diligence actual notice can be given.

It appears to me as being a logical and necessary conclusion that if the chancellor is not precluded from requiring appropriate proof of the allegations upon which order of publication is based as a prerequisite to entry of a decree and if the quality and quantity which should be required to satisfy the court upon the question of due diligence in these matters rests largely with the Court granting the order, then it follows that the Chancellor upon application being made for order of publication may, before granting the order, require proof satisfactory to him of the

1054

allegations upon which the order is to be based. This being true, then the Chancellor in the instant case was within the proprieties when he required proof that the affiant believed the defendants to be residents of a state or country other than the State of Florida. I can see no reason why the Chancellor, knowing that he must have this proof before he would enter a decree *pro confesso* based on the notice of publication, should not logically require that proof before making the order for publication, and thereby save expense, time and labor in the exercise of his lawful judicial discretion.

I therefore concur in the conclusion that the motion to quash should be granted.